**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re *Ex Parte* Application of<br><br>TOUR DES FINANCES NV GVBF<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No.        1:26-mc-213 |

**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY *EX PARTE* APPLICATION FOR AN ORDER TO SHOW CAUSE PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

**BOIES SCHILLER FLEXNER LLP**

Jenny H. Kim
Michael M. Fay
Eric Yang
Virginia Su
55 Hudson Yards, 20th Floor
New York, NY 10001
Tel.: (212) 446-2300
jkim@bsfllp.com
mfay@bsfllp.com
eyang@bsfllp.com
vsu@bsfllp.com

*Attorneys for Petitioner*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 4

    I.    Background Relating To The High Court Proceeding .......................................... 4

    II.    The High Court Proceeding ............................................................................... 6

    III.    The Discovery Requested is Narrowly Tailored and Necessary ....................... 7

    IV.    PIMCO Europe and PIMCO US are Closely Related Entities .......................... 8

ARGUMENT ..................................................................................................................... 9

    I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782 ............ 9

        A.    Respondent "Resides" or Is "Found in" this District ...................................... 10

        B.    The Discovery Sought is "For Use" in a Foreign Proceeding ...................... 10

        C.    Petitioner is an "Interested Person" ................................................................. 11

    II.    The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery ......................... 11

        A.    Respondent is Not a Participant in the High Court Proceeding .................................. 12

        B.    The United Kingdom Will Be Receptive to the Evidence Sought ............................... 12

        C.    Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions .................. 14

        D.    The Subpoena Is Not Unduly Burdensome and the Expedited Timeframe for Compliance is Appropriate ................................................................................ 14

    III.    Respondent Has Possession, Custody and Control over PIMCO Europe's Documents .. ................................................................................................................ 16

CONCLUSION ................................................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
　785 F. Supp. 2d 434 (S.D.N.Y. 2011)..................................................................11

*Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*,
　176 F.R.D. 75 (W.D.N.Y. 1996)........................................................................ 17

*Brandi-Dohrm v. IKB Deutsche Industriebank AG*,
　673 F.3d 76 (2d Cir. 2012) ................................................................................11

*Euromepa, S.A. v. R. Esmerian, Inc.*,
　51 F.3d 1095 (2d Cir. 1995) ............................................................................. 13

*Great Am. Ins. Co. v. Gemstone Prop. Mgmt., LLC*,
　2026 U.S. Dist. LEXIS 77945 (S.D.N.Y. Apr. 9, 2026).............................................. 15

*Gushlak v. Gushlak*,
　486 F. App'x 215 (2d Cir. 2012) ........................................................................ 1

*Hunter Douglas, Inc. v. Comfortex Corp.*,
　1999 WL 14007 (S.D.N.Y. Jan. 11, 1999) ............................................... 16, 17

*In re Application of Auto-Guadeloupe Investissement S.A.*,
　2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012)......................................... 13

*In re Application of BNP Paribas Jersey Tr. Corp. Ltd.*,
　2018 WL 895675 (S.D.N.Y. Feb. 14, 2018) .................................................. 14

*In re Application of CI Invs., Inc.*,
　2023 WL 8643965 (S.D.N.Y. Dec. 14, 2023) ............................................... 14

*In re Application of del Valle Ruiz*,
　939 F.3d 520 (2d Cir. 2019) ............................................................................. 10

*In re Application of Fernando Celso De Aquino Chad*,
　2019 WL 2502060 (S.D.N.Y. June 17, 2019) ............................................ 10

*In re Application of Guy*,
　2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004) ............................................ 10

*In re Application of Man Group Ltd.*,
　2025 WL294277 (S.D.N.Y. Jan. 24, 2025) ................................................ 10

*In re Application of Mother's Milk, Inc.*,
　2020 WL2514315 (S.D.N.Y. May 15, 2020)............................................. 15

*In re Application of Salem*,
2024 WL 3026670 (S.D.N.Y. June 17, 2024) ........................................................................ 14

*In re Application of Telegraph Media Grp. Ltd.*,
2023 WL 5770115 (S.D.N.Y. Sept. 6, 2023)........................................................................ 13

*In re Ernesto Andrade Grp.*,
712 F. Supp. 3d 438 (S.D.N.Y. 2024) .................................................................................. 10

*In re Ex Parte Application of Porsche Automobil Holding SE*,
2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ........................................................................ 15

*In re Ex Parte Application of SBK Art LLC*,
2024 WL 4264893 (S.D.N.Y. July 30, 2024)........................................................................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
236 F.R.D. 177 (S.D.N.Y. 2006) .......................................................................................... 16

*In re Gianoli Aldunate*,
3 F.3d 54 (2d Cir. 1993)........................................................................................................11

*In re Hornbeam Corp.*,
722 F. App'x 7 (2d Cir. 2018) ............................................................................................... 1

*In re Petition of Fed. Republic of Nigeria*,
2022 WL 4234556 (S.D.N.Y. Sept. 14, 2022) ..................................................................... 12

*In re Phillips*,
2004 U.S. Dist. LEXIS 16426 (S.D.N.Y. Aug. 18, 2004)..................................................... 13

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)..................................................................................................... passim

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) ...............................................................................9, 11, 12, 14

*Motorola Credit Corp. v. Uzan*,
2013 U.S. Dist. LEXIS 165209 (S.D.N.Y. Oct. 31, 2013)..................................................... 17

*Nokia Technologies O.Y. v. Oneplus Limited Technology (Shenzhen) Co., Ltd.*,
[2022] EWHC 2814 .............................................................................................................. 13

*South Carolina Insurance Co. v. Assurantie Maatschappij "De Zeven Provincien" N.V.*,
[1987] 1 A.C. 24.................................................................................................................... 13

*Strike 3 Holdings, LLC v. Doe*,
2020 WL 5992346 (S.D.N.Y. Oct. 9, 2020).......................................................................... 15

**Statutes**

28 U.S.C. § 1782 ................................................................................................................ passim

**Rules**

Fed. R. Civ. P. 30(b)(6) .................................................................................................. 7, 15, 17

Petitioner Tour des Finances NV GVBF ("Tour des Finances" or "Petitioner") respectfully applies to this Court *ex parte*[1] for an order pursuant to 28 U.S.C. § 1782 ("Section 1782") granting Petitioner leave to obtain targeted discovery from Respondent PIMCO Prime Real Estate LLC ("PIMCO US" or "Respondent") for use in a litigation in the High Court of Justice in the United Kingdom (the "High Court Proceeding") brought by Petitioner against CBRE Loan Services Limited ("CBRE" or "Agent") (the "Application").[2]

## PRELIMINARY STATEMENT

Petitioner purchased a building in Brussels, Belgium—the Finance Tower—and certain other properties adjoining the Finance Tower (together, the "Property") in 2020 for over €1.2 billion.  Petitioner financed part of the purchase price through loans provided pursuant to a Facilities Agreement ("FA") where CBRE acted as the Agent for various lenders—including certain Allianz entities.  PIMCO Prime Real Estate GmbH ("PIMCO Europe"), the European affiliate of PIMCO US, is the investment management company for those Allianz entities.  PIMCO Europe and PIMCO US are encompassed in another company, PIMCO Prime Real Estate ("PIMCO PRE").  In December 2024, the parties to the FA entered into an Amended and Restated Facilities Agreement ("AFA").

Petitioner brought the High Court Proceeding against the Agent for actions that the Agent took at the behest of the AFA majority lenders, which include PIMCO Europe and Legal & General Assurance Society Limited and its operating arm, Legal & General Investment Management

---

[1] Section 1782 applications may be granted *ex parte*.  *See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*"); *In re Hornbeam Corp.*, 722 F. App'x 7, 10–11 (2d Cir. 2018) (collecting cases).

[2] Filed herewith is the Declaration of Jenny H. Kim dated May 7, 2026 (the "Kim Decl.") and the Declaration of Michael Jacobs dated May 7, 2026 (the "Jacobs Decl.").

1

Limited ("LGIM," together with PIMCO Europe, the "Bad Actor Manager-Lenders").  As alleged in the High Court Proceeding, the Bad Actor Manager-Lenders began interfering with the contractually mandated appraisal process under the AFA in 2025.

*First*, in October 2025, the Bad Actor Manager-Lenders attempted to force an appraisal of the Property with their own appraiser without engaging in the contractually-required consultation process with Petitioner.

*Second*, after that attempt failed, Knight Frank LLP ("KF") was appointed by the Agent as the appraiser for a valuation of the Property as of December 2025.  KF provided a draft of its appraisal report in late December 2025, which appraised the Property at ~€1.081 billion.  However, the Bad Actor Manager-Lenders applied "undue pressure" on KF to reduce its valuation to below €950 million.  In response, KF resigned, and stated that "they have never experienced such a degree of unacceptable lender intervention in their careers."

*Third*, after KF resigned, the Agent and the Bad Actor Manager-Lenders rejected Petitioner's objections to the appointment of Jones Lang LaSalle srl ("JLL") as an alternative appraiser.  On April 10, 2026, JLL released a draft report appraising the Property at €920 million or over €160 million less than the KF appraisal – even though both appraisals were made as of December 2025.  The JLL appraisal manufactured this unreasonably low valuation by making several improper assumptions and employing erroneous valuation methodologies.

Why did the Bad Actor Manager-Lenders go to such lengths to obtain a depressed appraised value of the Property?  Because they were trying to manufacture a "cash trap" event under the AFA.  A cash trap event "traps" cash in the structure so that no money is distributed to Petitioner, and the lenders can use the money to make forced prepayments of the loans.

Petitioner commenced the High Court Proceeding on April 16, 2026 to seek urgent relief for the bad faith conduct of the Agent and the Bad Actor Manager-Lenders, which has already damaged Petitioner and its parent companies.

Through this application, Petitioner seeks documents from Respondent related to PIMCO Europe's participation in manufacturing a cash trap event, improper interference with the appraisal process, undue pressure on KF, and communications with JLL regarding its appraisal of the Property.  These documents will be important to proving Petitioner's claims in the High Court Proceeding, and because Respondent and PIMCO Europe are not parties to that proceeding, Petitioner respectfully requests the assistance of this Court to obtain this much-needed discovery.

Section 1782's statutory requirements are undisputably met here.  *First*, PIMCO US is headquartered in New York and thus, is "found" in this district.  *Second*, the requested discovery is "for use" in a foreign proceeding in the United Kingdom.  *Third*, Petitioner is a litigant in the High Court Proceeding and so is an "interested person."

Further, the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.* *("Intel")*, 542 U.S. 241 (2004), also weigh in favor of Petitioner's application.  *First*, Respondent and PIMCO Europe are not participants in the High Court Proceeding, thereby making it more difficult for Petitioner to obtain discovery from them in the U.K.  *Second*, both U.S. and U.K. courts have consistently held that English courts are receptive to receiving Section 1782 discovery. *Third*, it is well-established in England that Section 1782 applications are not attempts to circumvent English proof-gathering restrictions.  *Finally*, the subpoena at issue is tailored to the issues in the High Court Proceeding and is not unduly burdensome.  Courts also permit expedited discovery timelines where, as here, there is an urgent necessity in the foreign proceeding.

## BACKGROUND

### I.   Background Relating To The High Court Proceeding

Petitioner is the owner and operator of the Property, the largest commercial office premises in Belgium.  Jacobs Decl. ¶ 7.  Since 2020, the Property has consistently been valued in excess of €1.08 billion.  *Id.*

On January 7, 2020, Petitioner (as Borrower) entered into the FA with CBRE, the Defendant in the High Court Proceeding, and various lenders.  *Id.* ¶ 9.  Petitioner financed part of the purchase price for the Property through loans provided pursuant to the FA, with CBRE acting as the Agent and Security Agent for certain lenders, including PIMCO Europe.  *Id.* ¶¶ 9, 11.  On December 12, 2024, the parties to the FA entered into the AFA.  *Id.* ¶ 10.  The Bad Actor Manager-Lenders expressed their desire to exit the original FA but nonetheless agreed to enter into the AFA, partially due to a €140 million pay down of the loan by Petitioner to the lenders.  *Id.*  Petitioner's obligations under the AFA are secured by the Property.  *Id.*

Petitioner brought the High Court Proceeding against the Agent for actions that the Agent took at the behest of the majority lenders, which include PIMCO Europe and LGIM.  *Id.* ¶ 12.  As alleged in the High Court Proceeding, the Bad Actor Manager-Lenders began interfering with the contractually mandated appraisal process under the AFA in 2025.  *Id.*

As noted, the Bad Actor Manager-Lenders and Agent initially attempted to push forward an affiliate of Agent to value the Property in October 2025 without engaging in the contractually-required consultation process with Petitioner.  *Id.* ¶ 15.  After that attempt failed, KF was appointed by the Agent (at the direction of the lenders) as the appraiser for a valuation of the Property as of December 2025.  *Id.* ¶¶ 16–17.  KF provided a draft of its appraisal report in late December 2025, which valued the Property at ~ €1.081 billion (*id.* ¶¶ 17–18), but soon thereafter, the Bad Actor

4

Manager-Lenders applied "undue pressure" on KF to reduce its valuation to a figure below €950 million. *Id.* ¶ 17. Instead of conceding to this pressure, KF resigned on February 3, 2026. *Id.*

After KF resigned, the Agent obtained quotes from three other appraisers, including JLL. *Id.* ¶ 20. Petitioner objected to the use of JLL because Petitioner believed JLL was already subject to the undue influence of the Bad Actor Manager-Lenders and Petitioner requested that Colliers Valuation & Advisory Services be retained for the new appraisal. *Id.* Despite Petitioner's objection, the Agent appointed JLL as the appraiser on March 12, 2026. *Id.*

JLL provided its draft report on Friday, April 10 and the Agent demanded that Petitioner provide its comments on that report by Monday, April 13 at noon. *Id.* ¶ 21. It is apparent that the Agent was attempting to force the Petitioner to accept the JLL appraisal. *Id.* JLL's draft report valued the Property at €920 million or over €160 million less than the KF appraisal – even though both appraisals were made as of December 2025. *Id.* ¶¶ 17, 22, 24.[3] Critically, the JLL appraisal manufactured this unreasonably low valuation by assuming that Petitioner would be compelled to spend over €170 million (approx. $202 million) in 2034 in re-leasing the Property, even though the Property's sole tenant – the Belgium government – has indicated its intent to remain at the Property. *Id.* ¶ 24. JLL manufactured these baseless costs in order to arrive at an appraised value that was suspiciously in line with the value demanded of KF by the Bad Actor Manager-Lenders.[4]

---

[3] Notably, JLL's valuation is an outlier in a series of valuations that have otherwise consistently valued the Property at more than €1 billion. *Id.* ¶ 23. No changes in the circumstances of the Property or wider market conditions could possibly justify the divergence of the JLL valuation from all the earlier valuations. *Id.* ¶ 24.

[4] As further detail, JLL failed to properly account for the fact that the primary tenant of the Finance Tower is a sovereign tenant, *i.e.*, Belgian governmental agencies, who have: (a) fully occupied the building; (b) invested tens of millions of dollars in tenant improvements in the last year; and (c) a current lease through the year 2034. Further, tenant's conduct strongly indicates that it will stay beyond its lease term. *Id.* ¶ 24.

It is apparent the Bad Actor Manager-Lenders were trying to manufacture a "cash trap" event under the AFA.  A cash trap event "traps" cash so that no money from rental income from the Property can be distributed to Petitioner beyond certain "Permitted Expenses"; during this event, the lenders may use the money to make forced prepayments of the loans.  *Id*. ¶¶ 12–13.  A cash trap event is triggered if the LTV ratio exceeds a certain threshold, here 52.5%.  *Id*. ¶ 13.  The "value" portion of the LTV is determined by appraisals of the Property; hence, the lower the appraised value of the Property, the higher the LTV ratio.  JLL's artificially-depressed appraisal created an LTV ratio of 61%, which supposedly triggered the "cash trap."  *Id*. ¶ 23.  Since the JLL appraisal, the Agent has not distributed any funds to Petitioner in breach of the AFA.  *Id*.  Critically, the KF valuation would not have triggered a Cash Trap Event.  *Id*. ¶ 18.

## II.    The High Court Proceeding

On April 16, 2026, Petitioner commenced the High Court Proceeding against CBRE in the High Court of Justice (Commercial Court).  *Id*. ¶ 25.  On April 19, 2026, Petitioner filed applications (the "English Applications") within the High Court Proceeding seeking, *inter alia*, (i) expedition of the claim; and (ii) interim injunctive relief.  *Id*. ¶ 26.

Petitioner seeks a trial in July in the English Applications due to the urgent nature of the proceedings.  *Id*. ¶ 27.  The bad faith conduct of the Agent and Bad Actor Manager-Lenders – which caused a manufactured cash trap event – has damaged Petitioner and caused Petitioner's Korean parent company JR Global REIT ("JR Global"), which invested in the Property via Petitioner, to file an application for rehabilitation proceedings in Seoul Bankruptcy Court (an application similar to a Chapter 11 bankruptcy filing).  *See id*. ¶¶ 8, 28.  JR Global also filed an Autonomous Restructuring Support application to defer for 3 months the Seoul Bankruptcy Court's decision on whether to commence rehabilitation proceedings.  *Id*. ¶¶ 28–29.  This was

requested, among other reasons, to allow time for the High Court Proceeding to be resolved, as if it is resolved in Petitioner's favor, JR Global may avoid the need to enter formal rehabilitation proceedings. *Id*.[5] Petitioner and JR Global currently only have until the end of July to obtain a favorable decision in the High Court Proceeding.

The procedural timetable in the High Court Proceeding has yet to be finalized. *Id*. ¶ 34. If the High Court determines that the claims should be heard on an expedited basis, a trial in July means that discovery must be provided in May. *Id*. ¶ 35. As such, discovery from this Section 1782 application is urgently needed this month for the fast-moving High Court Proceeding.

### III.    The Discovery Requested is Narrowly Tailored and Necessary

Petitioner's requested discovery is highly relevant and will be used by Petitioner in the High Court Proceeding as evidence to support its claims. *See id*. ¶ 41. Petitioner seeks documents and communications from Respondent related to PIMCO Europe's participation in manufacturing a cash trap event, improper interference with the appraisal process, undue pressure on KF (which led to KF's resignation), and communications with JLL regarding its supposed appraisal of the Property. The requested 30(b)(6) deposition is tailored to Respondent's process of identifying, reviewing, preserving, sharing and producing such documents.

Neither Respondent nor PIMCO Europe is a party to the High Court Proceeding, so they are not required to take part in the discovery process in England. *Id*. ¶¶ 38, 40. The High Court has put no restrictions on foreign proof gathering and no discovery has been obtained from PIMCO

---

[5] An expedited outcome in the Petitioner's favor in the High Court Proceeding would result in (i) either the KF valuation being accepted by the Agent or a fresh valuation of the Property, free from lender interference and (ii) the release of monies from the structure, for the Petitioner to utilize as needed. *See id*. ¶ 30.

Europe. *Id*. ¶ 42.  Absent assistance from this Court, Petitioner will not have a practicable ability to obtain discovery from Respondent or PIMCO Europe in a timely manner. *Id*. ¶ 40.

## IV.  PIMCO Europe and PIMCO US are Closely Related Entities

PIMCO Europe and PIMCO US operate as part of a globally integrated real estate investment platform within the Allianz Group.  Both PIMCO Europe and PIMCO US are encompassed within PIMCO PRE, an entity which includes PIMCO Europe, PIMCO US, and other subsidiaries and affiliates.[6]  Notably, PIMCO Europe and PIMCO US also share an overlap of senior leadership at the PIMCO PRE level.  For example, François Trausch serves as Global CEO & CIO of PIMCO PRE while also acting as a Managing Director at the ultimate parent PIMCO company ("Parent PIMCO"); Annette Kröger serves as CEO Europe of PIMCO PRE; Dr. Holger Braun serves as CFO of PIMCO PRE; and Peggy DaSilva serves as CEO Americas of PIMCO US while also being a member of the PIMCO PRE global Management Committee.[7]

Publicly available materials confirm that both entities have adopted the Allianz Binding Corporate Rules ("BCRs"), which establish a binding data privacy framework for intra-group data transfers – including cross-border transfers and "remote access" to such data – thereby facilitating the sharing and availability of information across affiliated PIMCO entities in the ordinary course of business.[8]  Although the BCRs govern the sharing of personal data, the existence of these regulations clearly imply that PIMCO entities regularly share data with each other.  PIMCO

---

[6] *See* PIMCO Prime Real Estate, Homepage, https://pimcoprimerealestate.com (last accessed May 4, 2026).

[7] *See generally* PIMCO Prime Real Estate, People Finder, https://pimcoprimerealestate.com/en/people-finder (last accessed May 4, 2026).

[8] Kim Decl. Ex. B at 3–4; *see also* Privacy at Allianz, BCRs Companies (last accessed May 4, 2026, https://www.allianz.com/en/privacy-at-allianz.html#bcrcompanies).

8

Europe's privacy disclosures likewise contemplate intra-group user data sharing and cross-border transfers to other Allianz Group companies, suggesting that information is not siloed within PIMCO Europe but is accessible across the corporate group.[9]   These data-sharing practices, together with overlapping senior management and coordinated global governance structures across PIMCO Europe and PIMCO US, demonstrate a high degree of operational integration between the PIMCO's U.S. and non-U.S. entities.

**ARGUMENT**

Pursuant to Section 1782, a District Court may order an entity "to produce a document . . . for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782.  This Court should grant Petitioner's application because Petitioner plainly satisfies the statutory prerequisites for a Section 1782 action and the discretionary *Intel* factors.  Critically, discovery is liberally granted under Section 1782.[10]

### I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782

"As a threshold matter, an application for discovery under section 1782 must meet the following requirements: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign

---

[9] Kim Decl. Ex. D at 8–9.

[10] Section 1782 is "the product of congressional efforts . . . to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247.  Over time, Congress has "substantially broadened the scope of assistance federal courts could provide for foreign proceedings." *Id*. at 247–48.  Today, Section 1782 allows a litigant in foreign proceedings to seek a "broad range of discovery" to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful." *Id*. at 259, 262.  In considering Section 1782 applications, the court must keep in mind "the twin aims of Section 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Mees v. Buiter*, 793 F.3d 291, 297–98 (2d Cir. 2015) (quotations and citations omitted).

proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *In re Ernesto Andrade Grp.*, 712 F. Supp. 3d 438, 440 (S.D.N.Y. 2024) (quotations and citation omitted).  Petitioner easily satisfies Section 1782's statutory factors.

A.      **Respondent "Resides" or Is "Found in" this District**

PIMCO US is headquartered in New York and is thus "found" within this district.  The Second Circuit has interpreted Section 1782's "resides or is found" requirement to extend to "the limits of personal jurisdiction consistent with due process."  *In re Application of del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019).  Therefore, the "resides" or "found in" requirement is satisfied when the entity is headquartered in the state.  *See In re Application of Fernando Celso De Aquino Chad*, 2019 WL 2502060, at *3 (S.D.N.Y. June 17, 2019) (finding the "resides or is found" requirement to be satisfied where respondent banks are headquartered in New York).  Public databases, such as Bloomberg LEI, and PIMCO's website report PIMCO US's headquarters and address to be located at 1633 Broadway, New York, NY 10019.[11]  Accordingly, the first statutory requirement of Section 1782 is satisfied.

B.      **The Discovery Sought is "For Use" in a Foreign Proceeding**

The evidence Petitioners seek is "for use" in a foreign proceeding, a case pending before the High Court of Justice, Commercial Court in the U.K.  Courts in this district have ruled that litigation in the U.K.'s "High Court of Justice" qualifies as a "proceeding before a foreign or international tribunal" under Section 1782.  *See, e.g.*, *In re Application of Guy*, 2004 WL 1857580, at *2 (S.D.N.Y. Aug. 19, 2004); *In re Application of Man Group Ltd.*, 2025 WL294277, *3 (S.D.N.Y. Jan. 24, 2025).  The discovery is also "for use" in the High Court Proceeding because it

---

[11] Bloomberg LEI, last accessed May 3, 2026, (https://lei.bloomberg.com/leis/view/549300YEW3JYOG91OS74); *see* PIMCO Website Homepage (https://pimcoprimerealestate.com/).

10

is "relevant to the subject matter of the [foreign] proceeding, and the evidence would 'increase the applicant's chances of success' in the proceeding." *In re Ex Parte Application of SBK Art LLC*, 2024 WL 4264893, at \*7 (S.D.N.Y. July 30, 2024), *report and recommendation adopted in full*, 2025 WL 1537474 (S.D.N.Y. May 30, 2025), *aff'd*, 168 F.4th 68 (2d Cir. 2026) (quoting *Mees*, 793 F.3d at 291).[12]  As described above, the discovery requested here is plainly relevant, narrowly tailored, and essential.

## C.       Petitioner is an "Interested Person"

As a party to the High Court Proceeding, Petitioner is an "interested person" under Section 1782.  The Supreme Court explained in *Intel* that "litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." 542 U.S. at 256; *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) ("No doubt litigants are included among . . . the interested persons who may invoke § 1782.") (quoting *Intel*, 542 U.S. at 256).

## II.   The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery

As all threshold statutory requirements are satisfied, this Court should next consider the "four factors" outlined in *Intel* "in determining what discovery, if any, to allow": "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of

---

[12] Notably, a Section 1782 petitioner is not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceedings.  *See Brandi-Dohrm v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (finding that "as a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application"); *In re Gianoli Aldunate*, 3 F.3d 54, 62 (2d Cir. 1993) (holding that "section 1782 does not contain a requirement that the material requested in the district court be discoverable under the laws of the foreign jurisdiction").

11

the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) whether the discovery request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the discovery requested is 'unduly intrusive or burdensome.'" *Intel*, 542 U.S. at 264–65; *see also Mees*, 793 F.3d at 298.

### A.        Respondent is Not a Participant in the High Court Proceeding

Respondent is not a party to the High Court Proceeding and as such this factor weighs in favor of granting the application. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Conversely, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach" and, hence, their evidence "may be unobtainable absent § 1782's aid." *Id.*

Respondent is neither a party to nor participant in the High Court Proceeding and Petitioner will be limited in its ability to obtain relevant discovery in the High Court Proceeding. Jacobs Decl. ¶¶ 25, 38, 40. Accordingly, the first *Intel* factor weighs in favor of granting this Application. *See In re Petition of Fed. Republic of Nigeria*, 2022 WL 4234556, at *5 (S.D.N.Y. Sept. 14, 2022) ("Here, Respondents are not parties to the English Proceeding . . . The first favor thus weighs in favor of granting the application.")

### B.        The United Kingdom Will Be Receptive to the Evidence Sought

The "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity" of English courts to discovery obtained in the United States weigh heavily in favor of this Application. *Intel*, 542 U.S. at 264. In the Second Circuit, there is a strong presumption

that foreign tribunals will be receptive to evidence obtained under Section 1782, and thus the burden is placed on the party opposing discovery to show that a foreign tribunal would reject the evidence obtained through Section 1782. *See Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995); *In re Application of Auto-Guadeloupe Investissement S.A.*, 2012 WL 4841945, at *6 (S.D.N.Y. Oct. 10, 2012).

Courts in this District have consistently found that "courts in the United Kingdom . . . are [] receptive to Section 1782 discovery." *In re Application of Telegraph Media Grp. Ltd.*, 2023 WL 5770115, at *8 (S.D.N.Y. Sept. 6, 2023) (quotations omitted); *see also In re Phillips*, 2004 U.S. Dist. LEXIS 16426, at *5–6 (S.D.N.Y. Aug. 18, 2004) ("Here, the English Action is pending in the High Court of Justice . . .  a trial court which . . . hears the testimony of witnesses and receives documents in evidence, very much as American courts do.  And the nature of the English Action suggests that discovery is appropriate to obtain relevant testimony and documents . . . Nor is there any reason to suppose that the government of the United Kingdom would disfavor granting Applicants relief under § 1782.").[13]  Accordingly, the second *Intel* factor also weighs in Applicant's favor.

---

[13] Courts in the United Kingdom have similarly held that they are receptive to discovery provided through Section 1782.  The House of Lords held in *South Carolina Insurance Co. v. Assurantie Maatschappij "De Zeven Provincien" N.V.*, [1987] 1 A.C. 24 at [41]-[42], that "the basic principle … in the High Court in England is that it is for that party to obtain and present the evidence which he needs by his own means, provided always that such means are lawful in the country in which they are used."  *See also id.* at 42 ("I cannot see that [litigants], by seeking to exercise a right potentially available to them under the Federal law of the United States, have in any way departed from, or interfered with, the procedure of the English court.").  Similarly, in *Nokia Technologies O.Y. v. Oneplus Limited Technology (Shenzhen) Co., Ltd.* [2022] EWHC 2814, Meade J specifically stated that "third party disclosure procedures such as those under 1782 are a useful and necessary tool".  *See* Jacobs Decl. ¶¶ 43–44.

**C.      Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions**

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  "Because the English Court did not expressly reject the very discovery sought in the instant matter," any argument from Respondent challenging this factor would "fail[] at the outset." *In re Application of Salem*, 2024 WL 3026670, at *14 (S.D.N.Y. June 17, 2024) (citation omitted).

That Applicant is attempting to obtain such discovery in the United States prior to any similar requests in the United Kingdom is of no consequence.  *See In re Application of CI Invs., Inc.*, 2023 WL 8643965, at *5 (S.D.N.Y. Dec. 14, 2023); *In re Application of BNP Paribas Jersey Tr. Corp. Ltd.*, 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018).  As a policy, English Courts are receptive to discovery of relevant evidence obtained through Section 1782.  Jacobs Decl. ¶¶ 42–44.  Additionally, the High Court has imposed no restrictions on Petitioner's rights to pursue discovery in the U.S. in accordance with U.S. law.  *Id*.  Also, as described above, both U.S. and U.K. courts have recognized the value of Section 1782 applications.

**D.      The Subpoena Is Not Unduly Burdensome and the Expedited Timeframe for Compliance is Appropriate**

This request is neither unduly intrusive nor burdensome, as it is highly relevant to the underlying High Court Proceeding.  This Court should determine "whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302.  This determination depends on "factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden

14

imposed." *Great Am. Ins. Co. v. Gemstone Prop. Mgmt., LLC*, 2026 U.S. Dist. LEXIS 77945, at *9 (S.D.N.Y. Apr. 9, 2026) (citation omitted).

As described above, the documents and communications sought are narrowly tailored to the specific issues at play in the High Court Proceeding—PIMCO Europe's participation in manufacturing a cash trap event, improper interference with the appraisal process, undue pressure on KF (which led to KF's resignation), and communications with JLL regarding its appraisal of the Property.

Additionally, courts in this district "generous[ly]" permit the taking of a Federal Rule of Civil Procedure 30(b)(6) deposition in connection with a Section 1782 application, even in cases with "tight schedule[s]" and other potential difficulties. *In re Ex Parte Application of Porsche Automobil Holding SE*, 2016 WL 702327, at *13 (S.D.N.Y. Feb. 18, 2016) (permitting 30(b)(6) deposition despite "tight schedule" because it was "relatively evident from precedent in this circuit generous to Section 1782 applicants that there was a reasonable chance they would have to produce documents and prepare witnesses on a short timetable"); *see also In re Application of Mother's Milk, Inc.*, 2020 WL2514315, at *5 (S.D.N.Y. May 15, 2020) (permitting 30(b)(6) deposition because it would "provide helpful evidence to the [foreign] court in moving the case forward.") Here, the requested 30(b)(6) deposition is narrowly tailored to Respondent's process of identifying, reviewing, preserving, sharing, and producing documents.[14]

---

[14] In any event, Applicant is open to meeting and conferring with Respondent to address any scope or burden concerns. And if the Court has any remaining concerns about undue burden, granting this Application will not preclude Respondent from "contesting the subpoena[s] (including a motion to quash or modify the subpoena)". *Strike 3 Holdings, LLC v. Doe*, 2020 WL 5992346, at *2 (S.D.N.Y. Oct. 9, 2020).

15

Finally, the expedited timeframe for compliance requested in the subpoena (within 7 days of this Court granting this application) is entirely appropriate given the speed at which the High Court Proceeding is moving.  Jacobs Decl. ¶¶ 27, 35–36.

### III.    Respondent Has Possession, Custody and Control over PIMCO Europe's Documents

Respondent has possession, custody or control over the requested discovery and so should be ordered to produce it.  At the outset, given the documented existence of data sharing across PIMCO entities, there is every reason to believe that PIMCO US already has possession of the requested discovery.

However, at a minimum, PIMCO US has control over the requested discovery – which is sufficient for this Court to order its production – because PIMCO US has the practical ability to obtain documents from PIMCO Europe.  If Respondent "has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party." *In re Flag Telecom Holdings, Ltd. Sec. Litig*., 236 F.R.D. 177, 180 (S.D.N.Y. 2006) ("The test for the production of documents is control, not location" and the "concept of 'control' has been construed broadly" . . . [d]ocuments may be within the control of a party even if they are located abroad"); s*ee Hunter Douglas, Inc. v. Comfortex Corp.*, 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999) ("[t]he test to determine whether a corporation has custody and control over documents located with an overseas affiliate is not limited to whether the corporation has a legal right to those documents . . . [r]ather, the test focuses on whether the corporation has 'access to the documents' and 'ability to obtain the documents.'")

Indeed, courts have repeatedly held that control may be established through indicia of operational integration — including overlapping management, coordinated business functions, and the ordinary-course exchange of information among affiliated entities.  *See Hunter Douglas*, 1999

16

WL 14007, at *3 (finding control where documents "ordinarily flow freely" between affiliated entities); *Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*, 176 F.R.D. 75, 78–79 (W.D.N.Y. 1996) (compelling plaintiff to produce documents of affiliate entity where, as here, both entities were "corporate members of a unified worldwide business entity . . . under the common control of" a third entity, and plaintiff's executives had "regular contact" with the affiliate entity); *Motorola Credit Corp. v. Uzan*, 2013 U.S. Dist. LEXIS 165209, at *15 (S.D.N.Y. Oct. 31, 2013) (entity had control over another entity's documents where, *inter alia*, there was overlap of executives and the first entity exerted oversight over the other).

As discussed above, the PIMCO entities operate within a unified global platform, share overlapping senior management, and participate in a binding intra-group data transfer framework that expressly contemplates cross-border access to information.  These facts support the conclusion that documents responsive to Petitioner's Subpoena are accessible, and possibly routinely shared, across PIMCO entities in the ordinary course of business.[15]

Accordingly, Respondent has possession of the sought discovery, or, at minimum, has the practical ability to obtain those materials upon request.

## **CONCLUSION**

Petitioner respectfully requests that the Court grant its Application.

---

[15] As set forth herein, Petitioner submits that there are substantial indicia of possession, custody and control.  However, to the extent the Court believes that more is needed, Petitioner should be entitled to fully investigate the connection between PIMCO US and PIMCO Europe through available discovery devices such as the Rule 30(b)(6) deposition it is seeking.

DATED:  May 7, 2026

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

Jenny H. Kim
Michael M. Fay
Eric Yang
Virginia Su
55 Hudson Yards
New York, New York 10001
Tel: (212) 446-2300
MFay@bsfllp.com
JKim@bsfllp.com
eyang@bsfllp.com
vsu@bsfllp.com

*Attorneys for Petitioner*

18