**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re *Ex Parte* Application of<br><br>TOUR DES FINANCES NV GVBF<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 1:26-mc-00213 |

# MEMORANDUM OF LAW IN SUPPORT OF RENEWED APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

**BOIES SCHILLER FLEXNER LLP**

Jenny H. Kim
Michael M. Fay
Eric Yang
Virginia Su
55 Hudson Yards, 20th Floor
New York, NY 10001
Tel.: (212) 446-2300
jkim@bsfllp.com
mfay@bsfllp.com
eyang@bsfllp.com
vsu@bsfllp.com

*Attorneys for Petitioner*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... III

PRELIMINARY STATEMENT ..... 1

PROCEDURAL BACKGROUND ..... 4

ARGUMENT ..... 8

I. There Is No Undue Burden Because Of The Amendments In Petitioner's Renewed Application ..... 8

II. Numerous Courts Have Compelled U.S. Affiliates To Produce Documents Held By Foreign Affiliates ..... 11

III. This Court Should Grant a Fed. R. Civ. P. 30 (b)(6) Deposition ..... 16

CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Cases**

*Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*,
176 F.R.D. 75 (W.D.N.Y. 1996)........................................................................ 13

*Balintulo v. Ford Motor Co.*,
796 F.3d 160 (2d Cir. 2015) ........................................................................ 15

*Banoka S.a.r.l. v. Elliott Mgt. Corp.*,
148 F. 4th 54 (2d Cir. 2025)........................................................................ 3, 9, 12

*Coventry Cap. US LLC v. EEA Life Settlements Inc.*,
334 F.R.D. 68 (S.D.N.Y. 2020) ........................................................................ 4, 12, 15

*DeSmeth v. Samsung Am.*,
1998 U.S. Dist. LEXIS 1907 (S.D.N.Y. Feb. 19, 1998)........................................ 14

*Huang v. iTV Media, Inc.*,
2017 WL 706194 (E.D.N.Y. Feb. 22, 2017) ........................................................ 13, 15

*In re Application of Accent Delight Int'l, Ltd.*,
2018 U.S. Dist. LEXIS 97673 (S.D.N.Y. June 11, 2018) ....................................11, 14

*In re Application of Cbre Global Inv. Nl B.V.*,
2021 U.S. Dist. LEXIS 128412, (S.D.N.Y. July 9, 2021)........................................ 16

*In re Application of del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019)........................................................................ *passim*

*In re Application of Gonzalez*,
2022 WL 17583628 (S.D. Fla. Aug. 8, 2022)........................................................ 14

*In re Application of Polygon Glob. Partners LLP,*
2021 U.S. Dist. LEXIS 90143 (D.R.I. May 11, 2021)............................................ 14

*In Re Application of SBK ART LLC,*
168 F.4th 68 (2d Cir. 2026)........................................................................ 3, 9, 12

*In re Hansainvest Hanseatische Inv.-GMBH*,
364 F. Supp. 3d 243 (S.D.N.Y. 2018) ........................................................................11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)........................................................................ *passim*

*Sergeeva v. Tripleton Int'l Ltd.*,
834 F.3d 1194 (11th Cir. 2016) ........................................................................ 14

**Statutes**

28 U.S.C. § 1782 ........ *passim*

**Rules**

Fed. R. Civ. P. 30 ........ 4, 16

Fed. R. Civ. P. 34 ........ 13

Tour des Finances NV GVBF ("Tour des Finances" or "Petitioner") respectfully renews its application to this Court for an order pursuant to 28 U.S.C. § 1782 ("Section 1782") granting Petitioner leave to obtain targeted discovery from Respondent PIMCO Prime Real Estate LLC ("PIMCO US" or "Respondent") for use in a litigation in the High Court of Justice in the United Kingdom (the "High Court Proceeding") brought by Petitioner against CBRE Loan Services Limited ("CBRE" or "Agent") (the "Renewed Application").[1]

## PRELIMINARY STATEMENT

At a hearing held by this Court on May 12, 2026 ("May 12 Hearing"), the Court noted that there was no dispute that Petitioner's previous Section 1782 application (the "First Application") satisfied the statutory requirements of Section 1782 and three of the four discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc*. ("*Intel*"), 542 U.S. 241 (2004). (Kim Decl. Ex. B, "May 12 Tr." 2:8-20; 9:16-12:4) The Court recognized that only the fourth *Intel* factor was "in dispute, whether the request is unduly intrusive or burdensome" and that "along with that issue comes a related issue, and that is whether the respondent has control over the documents." (May 12 Tr. 11:4-12:4)

At the May 12 Hearing, the Court recognized that the High Court Proceeding "has enormous ramifications for the parties who are in litigation in Britain," and discovery through Section 1782 from Respondent "could be very fruitful in helping the British Court arrive at the truth." (May 12 Tr. at 15:20-24) As such, the Court stated that it would be "happy to grant [the] application" should Petitioner: (i) agree to narrow the requested discovery; (ii) provide certain "protection" and "assistance" to the Respondent in producing the requested discovery; and (iii)

[1] Filed herewith is the Declaration of Jenny H. Kim, dated May 16, 2026 (the "Kim Decl."), the Declaration of Michael Jacobs, dated May 16, 2026 (the "Jacobs Decl."), and the Declaration of Meredith Schultz, dated May 16, 2026 (the "Schultz Decl.").

provide "analysis of whether an American affiliate [may have] control over a foreign affiliate's documents for production under the Federal Rules of Civil Procedure." (May 12 Tr. 15:20-16:7) Petitioner's Renewed Application checks these three boxes.

First, as attached to this Application, Petitioner proposed significantly narrowed discovery requests to Respondent, which identify only 3 custodians, narrow the applicable date ranges to approximately two years, and reduce the number of requests from six requests to just two. Further, in a May 14 meet and confer ("May 14 M&C") with Respondent's counsel, Petitioner offered to further narrow the scope of the requests if Respondent would voluntarily agree to produce responsive documents. (Kim Decl. ¶ 5) After the May 12 Hearing, Petitioner also conferred again with its English solicitors, who have confirmed that the High Court would likely accept disclosure of documents from Respondent by or around June 20, 2026. (Jacobs Decl. ¶¶ 35–36)

Second, at the May 14 M&C, Petitioner stated that it would be amenable to shoulder the costs of GDPR compliance related to the production of responsive documents. (Kim Decl. ¶ 6) As reflected in the Schultz Declaration, any GDPR compliance-related costs associated with PIMCO Prime Real Estate GmbH ("PIMCO Europe") producing documents here would be relatively modest. (Schultz Decl. ¶¶ 21–22)

Third, in a decision that was discussed with the Court at the May 12 Hearing, *In re Application of del Valle Ruiz* ("*Ruiz*"), 939 F.3d 520, 533–34 (2d Cir. 2019), the Second Circuit affirmed an order by Judge Ramos that ordered a U.S. affiliate (Santander Investment Securities Inc. or "SIS") to produce documents held by its Spanish affiliate or parent, Banco Santander S.A., in response to a Section 1782 application made by *Respondent's parent company*, Pacific Investment Management Company, LLC (or "PIMCO"). The Second Circuit specifically identified SIS as the "New York-based affiliate" of Banco Santander, which is located in Madrid,

Spain, and held that "there is no *per se* bar under § 1782 to extraterritorial discovery." *Ruiz*, 939 F.3d at 523, 534.

Indeed, the Second Circuit issued a decision just a few months ago in February 2026 consistent with its holding in *Ruiz*. In *In Re Application of SBK ART LLC*, 168 F.4th 68, 85–86 (2d Cir. 2026), the Second Circuit affirmed an order by the district court granting a Section 1782 application seeking documents from New York-based Akin Gump Strauss Hauer & Feld, LLP ("Akin Gump NY") and its U.K.-affiliate Akin Gump LLP, a separate entity with a separate partnership registration number that employed foreign U.K. solicitors ("Akin Gump UK"). Akin Gump NY made the identical arguments that Respondents make here, that under the Second Circuit's decision in *Banoka S.a.r.l. v. Elliott Mgt. Corp.*, 148 F. 4th 54, 70 (2d Cir. 2025), the petitioner's application should be dismissed because of the undue burden imposed by "the foreign location of the documents and the foreign status of their 'primary custodian.'" *SBK ART LLC*, 168 F.4th at 85. In *SBK ART*, the Second Circuit disagreed and distinguished *Banoka*, finding:

> But while *Banoka* found it was not an abuse of discretion to consider the foreign location of documents, it did not impose a rule *requiring* consideration of that factor. That the *Banoka* district court did not abuse its discretion in *denying* that petition does not mean the District Court here abused its discretion in *granting* this petition. *Banoka* merely underscores the well-settled principle that a district court has broad discretion under Section 1782. *See id.* at 65.
>
> As the District Court stated: "[The R&R] significantly limited the requested discovery, and found that the burden presented [by] the approved discovery justified by the needs of SBK's foreign litigation, which, aims to recoup approximately 500 million euros in losses alleged suffered by SBK as a result of the Corporate Changes." *SBK II*, 2025 WL 1537474, at *12 n.8. Further, the District Court was fully aware of the extraterritorial nature of the discovery. *See, e.g.*, *SBK I*, 2024 WL 4264893, at *19-20 (addressing Akin's burden argument that proposed subpoenas would "discourage clients from hiring the foreign office of American law firms"). In assessing the proportionality and burden issues, the District Court acted well within its discretion.

*Id.* at 85–86. Petitioner also identifies additional decisions below that support a finding that U.S. courts can compel the production of documents from a foreign affiliate which has "distinct

ownership, management, officers, directors, and information systems" through a U.S. affiliate. *See, e.g.*, *Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 334 F.R.D. 68, 71–72 (S.D.N.Y. 2020).

At the May 12 Hearing, this Court also directed Respondent to answer whether PIMCO US could "access the documents on the [PIMCO Europe] servers" given Respondent had previously submitted an ambiguous declaration by Zachary Gerber that merely stated that PIMCO US did not have "unrestricted access" to PIMCO Europe's documents. (*See* ECF No. 15 ("Gerber Decl.") ¶ 13; May 12 Tr. 18:7-17) In response, Mr. Gerber, a compliance officer for PIMCO US, submitted a supplemental declaration that states he has access to "compliance related files" that are located on PIMCO Europe's servers. (ECF No. 21 ("Gerber Supp. Declaration") ¶ 4) Although Mr. Gerber further stated that he, *personally*, does not have access to other documents or communications held by PIMCO Europe, the evidence of "document sharing" now attested to by Mr. Gerber is sufficient to allow the Court to grant this Renewed Application. (ECF No. 21 ¶ 4) To the extent that more evidence is necessary, Petitioner respectfully requests that the Court order a Fed. R. Civ. P. 30(b)(6) deposition of a representative from PIMCO US to determine the extent of document sharing between PIMCO US and PIMCO Europe, including whether PIMCO Europe would accede to the demands by PIMCO US to produce documents required pursuant to this Court's order.

As set forth below, Petitioner has met its burden as to the fourth *Intel* factor and the Court would be acting well within its discretion in granting the Petitioner's Renewed Application. Accordingly, Petitioner respectfully requests the Court grant the Renewed Application.

**PROCEDURAL BACKGROUND**

On May 7, 2026, Petitioner filed its Emergency *Ex Parte* Application for an Order to Show Cause Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. (ECF

No. 1) The requested discovery is necessary for Petitioner to prosecute its action in the High Court Proceeding, particularly because PIMCO Europe's alleged improper interference with the appraisal process – including through undue pressure upon appraisers – are central to the dispute. (ECF No. 5 at 9–11)

On May 12, 2026, Respondent filed, *inter alia*, an opposition brief and Declaration from Zachary Gerber, the Director of Compliance at PIMCO US. (ECF Nos. 15 & 16) The Gerber Declaration stated that PIMCO US "personnel are not granted *unrestricted access* to [PIMCO Europe's] email or document repositories for documents concerning [PIMCO Europe's] business, which are housed on the EU Servers." (ECF No. 15 ¶ 13) (emphasis added). The Gerber Declaration also noted that Mr. Gerber had asked the Data Protection Officer at PIMCO Europe if he would provide the requested documentation and the Data Protection Officer replied not "at this time" largely related to privacy regulations, including the GDPR. (ECF No. 15 ¶ 14)

On the same day, Petitioner submitted its reply in further support of its First Application, largely noting the insufficiencies and inconsistencies in the Gerber Declaration and citing additional supportive case law. (ECF No. 18)

At the May 12 Hearing, the Court found that there was no dispute that Petitioner met the Section 1782 statutory factors and three out of four of the *Intel* factors. (May 12 Tr. 10:2-11:3) The Court stated that the only *Intel* factor in dispute was "whether the request is unduly intrusive or burdensome," which implicated a "related issue, and that is whether the respondent has control over the documents." (May 12 Tr. 11:4-7) Notably, Respondent conceded it was not "arguing that just because the documents are abroad, 1782 wouldn't apply." (May 12 Tr. 7:23-8:1)

The Court then granted leave for Petitioner to renew its application, stating that it would be "happy to grant [the] application" because it "could be very fruitful in helping the British Court

arrive at the truth" and the High Court Proceeding "has enormous ramifications for the parties who are in litigation in Britain." (May 12 Tr. 15:20-24) The Court requested that Petitioner only seek "core documentation;" provide "protection" and "assistance" for the Respondent "in producing these documents;" and provide "analysis of whether an American affiliate [may have] control over a foreign affiliate's documents for production under the Federal Rules of Civil Procedure." (May 12 Tr. 15:20-16:7) The Court asked Respondent whether "someone from the United States [can] access the documents on the EU servers;" Respondent answered "I do not know" and the Court ordered Respondent to get the Court and Petitioner an answer. (May 12 Tr. 18:7-20) On May 13, 2026, the Court denied Petitioner's original application without prejudice to file a renewed application. (ECF No. 20)

On May 13, 2026, Petitioner's counsel emailed Respondent's counsel, informing Respondent that Petitioner intended to renew its Section 1782 application. (ECF No. 22-1 at 2–3). Petitioner's counsel also requested information about whether PIMCO US "has access to the email communications or documents of" PIMCO Europe and whether PIMCO Europe "can grant access to [PIMCO US] for the responsive documents." (*Id.*) Petitioner's counsel also requested a meet and confer to discuss a reasonable cost-sharing arrangement for GDPR compliance costs. (*Id.*) Later that day, Petitioner's counsel sent narrowed document requests. (*Id.*)

Respondent's counsel filed the Supplemental Gerber Declaration shortly after this email was sent. Mr. Gerber admitted in the Supplemental Declaration that he does "have access to a folder that contains various regulatory compliance related files that are located on [PIMCO Europe's] servers that are located in Europe. The files in that folder are populated by [PIMCO Europe's] regulatory compliance personnel." (ECF No. 21 ¶ 4). Mr. Gerber also stated that he,

*personally*, did not have access to the *specific* records that were being sought by Petitioner's subpoena. (*Id.*)

Petitioner then filed a letter on May 13, 2026, informing the Court of its intention to renew its Section 1782 application. (ECF No. 22) In the letter, Petitioner also outlined why the statements in the Supplemental Gerber Declaration did not answer the Court's stated question. (*Id.* at 1–2) Namely, whether "someone from the United States [can] access the documents on the EU servers?" (May 12 Tr. 18:7-8) The Supplemental Gerber Declaration merely states that Mr. Gerber, *personally*, only has access to PIMCO Europe's servers for a shared file folder containing compliance documents, and not whether PIMCO US personnel can obtain PIMCO Europe's documents to comply with a court order. (*See* ECF No. 21 ¶ 4)

On May 14, 2026, Petitioner's counsel and Respondent's counsel had a meet and confer to discuss Petitioner's Renewed Application, including Petitioner's offer to cover the reasonable costs associated with GDPR compliance and reasonable indemnification to Respondent for any potential GDPR breaches, as well as Petitioner's narrowed document requests. (Kim Decl. ¶¶ 4–6) Despite Petitioner's offers at compromise and cost-sharing, Respondent stated that it was unlikely to come to an out-of-court agreement with Petitioner on Petitioner's discovery requests. (*Id.* ¶¶ 5–6)

During the May 14 M&C, Respondent's counsel also suggested that Respondent would submit a third declaration by Mr. Gerber where he would state that no one at PIMCO US could access the documents and communications held by PIMCO Europe. (*Id.* ¶ 8) Petitioner's counsel asked if such documents or access would be provided by PIMCO Europe if this Court granted the Renewed Application. (*Id.*) Respondent's counsel referred back to Mr. Gerber's first declaration and stated that such a demand had been made and PIMCO Europe declined to produce any

documents "at this time." (*Id.*) Of course, Mr. Gerber made that request on PIMCO Europe's Data Protection Officer before any ruling had been issued from this Court.

Finally, at the May 14 M&C, Respondent requested that the parties agree to a briefing schedule for the Renewed Application. (Kim Decl. ¶ 9) Petitioner responded that, because the Renewed Application needed to be made on an emergency basis, it was unlikely to be able to agree to a briefing schedule. (*Id.*) However, in the spirit of cooperation, Petitioner's counsel emailed Respondent on Friday, May 15, 2026, and informed Respondent that it would be filing the Renewed Application on Saturday, May 16, 2026 so that Respondent would have sufficient time to start preparing its opposition before this Court set a hearing on the Renewed Application. (*Id.*) Respondent's counsel responded and requested that it be allowed to file its opposition on Thursday, May 21, 2026, with a hearing to be scheduled the following week. (*Id.* ¶ 10) Because the Renewed Application must be considered on an expedited basis, Petitioner declined. (*Id.*) Petitioner respectfully requests that this Court set a hearing on the Renewed Application at its earliest convenience.

## ARGUMENT

### I. There Is No Undue Burden Because Of The Amendments In Petitioner's Renewed Application[2]

On February 20, 2026, the Second Circuit held that – while respondents are "entitled to object to any discovery sought on the grounds that production imposes undue burdens", "such objections are properly addressed *not at the Section 1782 stage* – which merely opens the gate to

[2] As the Court previously found that there was no dispute that Petitioner's First Application met the three statutory factors of Section 1782, and that three of the four *Intel* discretionary factors weighed in favor of granting the application, Petitioner does not address those factors here. For the Court's reference, those factors were discussed in Petitioner's Memorandum of Law In Support Of Its Section 1782 Application (ECF No. 5 at 14-21).

discovery – but, *after a Section 1782 petition is granted*, through the ordinary rules governing discovery under the Federal Rules of Civil Procedure." *SBK ART LLC*, 168 F.4th at 72, 79 ("Rules 45 and 26 thus impose important limitations on the scope of discovery available to the petitioner, but those limitations come into play only after – and separately from – the determination of whether discovery is authorized under Section 1782."); *id*. at 84 ("the District Court did not abuse its discretion in granting the petition, in spite of the potential burdens that may be imposed on [Respondent] in responding").[3] Notably, the Second Circuit also emphasized that it "is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Id*. at 78 (citation omitted).

Here, at the May 12 Hearing, this Court requested that Petitioner narrow its document requests and offer Respondent a cost-sharing agreement to cover the costs of GDPR compliance, as well as reasonable indemnification.

As reflected in the amended subpoena attached to the Renewed Application ("Amended Subpoena"), as well as the email to Respondent's counsel, Petitioner substantially narrowed its document requests. (ECF No. 22-1 at 2) Petitioner listed six separate document requests in the subpoena attached to its First Application, with a broader date range, and no limit to the custodians. In the Amended Subpoena, Petitioner requests:

1. Documents and Communications involving Bruno Dord, Julia Marciano and Debora Sobel from June 1, 2025 through April 15, 2026 regarding the Property's valuation—including the selection of and communications with the valuers, beginning with the process that led to the selection of CBRE Valuation

[3] The Second Circuit also held that *Banoka*, referenced by this Court at the hearing, does not "require[] a district court to consider [] extraterritoriality factors." *SBK ART LLC,* 168 F.4th at 85. As such, this Court is under no obligation to analyze the foreign location of the documents in assessing burden.

and Advisory Services as a potential valuer in 2025 and ending with the execution of the JLL Valuation in April 2026.

2. Documents and Communications involving Bruno Dord, Julia Marciano and Debora Sobel from January 1, 2024 through December 31, 2024 concerning PIMCO's participation in the Amended Facilities Agreement, and from January 1, 2025 through April 15, 2026 concerning a Cash Trap Event or an event of default under the Amended Facilities Agreement.

These requests narrow the date range, limit the production to three custodians and reduces the number of requests from six to two. At the May 14 M&C, Petitioner also suggested to Respondent's counsel that it would be willing to discuss further narrowing these requests if Respondent would agree to voluntarily produce documents in response to the Amended Subpoena. (Kim Decl. ¶ 5) Respondent declined.

At the May 14 M&C, Petitioner also represented that Petitioner would be willing to bear Respondents' reasonable costs associated with GDPR compliance and provide reasonable indemnification to Respondent in connection with potential breaches of the GDPR. (*Id*. ¶ 6) Petitioner asked Respondent for a rough estimate of its costs for complying with the GDPR if Respondent produced documents responsive to Petitioner's narrowed requests. (*Id*.) Respondent's counsel stated it could not provide the estimate at that time. (*Id*.) Respondent's counsel later called back and asked if Petitioner had a "ceiling" for which it would provide reimbursement to Respondent. (*Id*. ¶ 7) Petitioner responded that it could not provide a "ceiling" when it had no further information from Respondent on a range of potential costs. (*Id*.)

Since that call, however, Petitioner's counsel has discussed the issue with a colleague, Meredith Schultz, who specializes in representing European companies which need to comply with the GDPR when producing documents to the United States. In her declaration, Ms. Schultz states that PIMCO US and PIMCO Europe already have the corporate transfer mechanisms and paperwork in place to facilitate the transfer of data from PIMCO Europe to PIMCO US in a GDPR-

compliant manner. (Schultz Decl. ¶ 16) Even if PIMCO Europe decided that a Legitimate Interest Assessment or "LIA" were required, any costs associated with such an assessment would be "modest" and likely "well within the low five-figures USD."[4] (*Id.* ¶¶ 21–22)

## II. Numerous Courts Have Compelled U.S. Affiliates To Produce Documents Held By Foreign Affiliates

At the May 12 Hearing, this Court asked Petitioner to provide in the Renewed Application "some legal authority [which] doesn't have to be under 1782 [and] can be under the Federal Rules of Civil Procedure, [] an analysis of whether an American affiliate has control over a foreign affiliate's documents for production under the Federal Rules of Civil Procedure." (May 12 Tr. at 16:2-7) As requested, the following are cases that stand for the proposition that a court may order a U.S. affiliate to obtain discovery held by a foreign affiliate.

1. *In re Application of del Valle Ruiz*, 939 F.3d 520, 523 (2d Cir. 2019): Petitioners, which included PIMCO, sought discovery under 28 U.S.C. § 1782 in connection with foreign proceedings challenging Banco Santander, S.A.'s ("Santander") acquisition of Banco Popular Español, S.A. ("BPE"). The petitioners sought discovery from, among other entities, SIS, an American-based affiliate of a foreign company. *Id.* at 523 (identifying SIS as Santander's "New York-based affiliate"). The district court granted discovery as to SIS,

---

[4] Further, as Judge Sullivan stated in *Hansainvest*, GDPR compliance concerns are insufficient to defeat a Section 1782 application where the petitioner assumed "the costs of compliance with the GDPR" and agreed to "indemnify Respondents against any potential breaches" – precisely as Petitioners have offered to do here. *See In re Hansainvest Hanseatische Inv.-GMBH*, 364 F. Supp. 3d 243, 252 (S.D.N.Y. 2018) (Sullivan, J.). Courts in this district have also found that compliance with international data privacy directives is not unduly burdensome under the fourth *Intel* factor. *See, e.g.*, *In re Accent Delight Int'l, Ltd.*, 2018 U.S. Dist. LEXIS 97673, at *19-20 (S.D.N.Y. June 11, 2018) (finding no undue burden or intrusiveness where respondent raised "concerns that the European Union's Data Privacy Directive . . . [will require] a 'document-by-document review' to redact protected information" since "[respondent] proffers no reason to expect that many (or even any) of its documents would disclose such protected data" and "to the extent [respondent] has concerns about confidentiality, the appropriate remedy is a protective order of the sort that the Court previously entered.")

allowing petitioner to seek discovery through SIS of documents held by SIS's foreign affiliate, Santander. *See In re Ruiz,* 342 F. Supp. 3d 448, 459–60 (S.D.N.Y. 2018). The Second Circuit affirmed, holding that "there is no *per se* bar under § 1782 to extraterritorial discovery." *Ruiz*, 939 F.3d at 534.

2. *In Re Application of SBK ART LLC*, 168 F.4th 68, 72–73 & n.2 (2d Cir. 2026): The Second Circuit affirmed a district court order granting a Section 1782 petition filed against Akin Gump NY, "the American multinational law firm, and Akin Gump [UK], the entity that employs Akin's United Kingdom solicitors." On appeal, respondent's unsuccessful arguments mirrored that of PIMCO US: that Akin Gump UK was a "separate entity" from Akin Gump NY and that the Second Circuit's "recent decision in *Banoka* confirms that extraterritoriality factors—including the foreign location of the documents and their custodians—are at least *relevant* to the exercise of a court's discretion in deciding whether to grant a Section 1782 application. That is particularly true where, as here, the non-U.S. office of a law firm is targeted due to its foreign representation of a foreign client concerning a foreign matter[.]" *In Re Application of SBK ART LLC*, 25-1563 (2d Cir. 2026) at ECF No. 33.1 at 15 & 55. *See also In Re SBK ART LLC*, 1:24-mc-00147, ECF No. 3-9 (S.D.N.Y.) (Akin Gump NY and Akin Gump UK have separate corporate registration numbers).

3. *Coventry Cap. US LLC v. EEA Life Settlements Inc*., 334 F.R.D. 68, 71–72 (S.D.N.Y. 2020): The Court affirmed the magistrate judge's decision granting plaintiff's motion to compel an entity, EEA, "to search for and produce documents held by EEA UK"—an affiliate which had "distinct ownership, management, officers, directors, and information systems." Plaintiff had previously been permitted to depose an "EEA director" "on

questions of EEA's access to documents held by EEA UK[.]" *Id*. at 70. The Court ultimately affirmed the magistrate judge's finding that EEA "had control over [EEA UK's] documents within the meaning of Rule 34 of the Federal Rules of Civil Procedure" where the director's testimony "indicate[d]" "a flow of information and documents from EEA UK . . . to EEA in the ordinary course of business." *Id*. at 71, 73.

4. *Huang v. iTV Media, Inc.*, 2017 WL 706194, at *1, 8 (E.D.N.Y. Feb. 22, 2017): The Court granted a motion to compel production of documents in the possession of non-party iTV Beijing, a foreign entity, because it found that iTV.CN, Inc. – a Delaware corporation – had the "'requisite 'control' within the meaning of Fed. R. Civ. P. 34 over the documents held by iTV Beijing." *Id.* at *8. The Court found that control existed because the two "sister corporation[s]" were "wholly owned by the same entity," and there was a "free flow of information" and "a level of cooperation" between the two entities. *Id*. at *8–9. The information that "flowed" included "budget, payroll reports, organization chart[s], and company policies—such as travel and vacation policies and the employee handbook . . ." *Id*. at *8.

5. *Alcan Int'l Ltd. v. S.A. Day Mfg. Co*., 176 F.R.D. 75, 76, 77–79 (W.D.N.Y. 1996): The Court granted "defendant's motion to compel SPC [a division of a Delaware company] to produce documents and deposition testimony in the possession, custody or control of Solvay Fluor [a German corporation]" where Solvay Flour was "not a party to t[he] action" and a "foreign corporate affiliate of SPC." *Id.* The court noted that "[w]hen considering whether information sought from a corporate party's foreign affiliate is in the party's 'custody and control' so as to be discoverable under the Federal Rules, the focus is on the nature of the relationship between the two corporations." *Id*. at 78. The Court held that

control existed because the two entities were, as here, "corporate members of a unified worldwide business entity"; and SPC executives had "regular contact with Solvay Flour regarding product sales and marketing." *Id*. at 79.

6. *Sergeeva v. Tripleton Int'l Ltd*., 834 F.3d 1194, 1197, 1200–201 (11th Cir. 2016):[5] The Eleventh Circuit, in affirming a District Court's decision that granted a Section 1782 application, found that a U.S. entity had control over documents possessed by foreign affiliated entities. The Eleventh Circuit held that the District Court correctly "determined that 'the legal right to obtain documents requested upon demand' may be established where affiliated corporate entities—who claim to be providers of complimentary and international financial services—have actually shared responsive information and documents in the normal course of their business dealings." *Id*. at 1201. The Eleventh Circuit further held that "circumstantial evidence" could be used to establish whether a US-entity had "'control' over responsive documents in the physical possession or custody of" a foreign entity. *Id*.

7. *DeSmeth v. Samsung Am*., 1998 U.S. Dist. LEXIS 1907, at *2 n.4, 33 (S.D.N.Y. Feb. 19, 1998)[6]: The Court granted a motion to compel Samsung America to produce "documents

[5] The Second Circuit expressly adopted the position of the Eleventh Circuit in this decision that Section 1782 allows extraterritorial discovery in *Ruiz*, 939 F.3d at 532–33. Indeed, *Sergeeva* is widely cited for its principles on Section 1782 discovery. *See also In re Application of Gonzalez*, 2022 WL 17583628, at *2, 5–6 (S.D. Fla. Aug. 8, 2022) (applying *Sergeeva* and finding that a U.S. entity cannot refuse to produce documents held by its Mexican affiliate simply because the Mexican affiliate "rebuffed" its request due to restrictions in Mexican law); *In re Application of Polygon Glob. Partners LLP*, 2021 U.S. Dist. LEXIS 90143, at *9 (D.R.I. May 11, 2021) (citing *Sergeeva's* holding that "the location of responsive documents and electronically stored information . . . does not establish a *per se* bar to discovery under § 1782."); *Accent Delight Int'l, Ltd*., 2018 U.S. Dist. LEXIS 97673, at *11–12 (same).

[6] Although *DeSmeth* involves a U.S. subsidiary who was ordered to obtain documents from its parent in Korea as opposed to an affiliate to an affiliate, a subsidiary is an entirely separate corporate entity from its parent just as an affiliate is a separate corporate entity from an affiliate.

and information in the possession, custody and control of Samsung Korea entities," one of which was Samsung America's parent. The Court noted that courts "have found that the control analysis under Rule 34 of the Federal Rules of Civil Procedure does not require that a party have actual managerial power over the foreign corporation, but rather that there be close coordination between them" and that such "a pragmatic approach, based upon common sense notions of control, is employed in many decisions in this area." *Id*. at *32–33 (the "Samsung companies may not hold themselves out as united for some purposes, but unconnected for others.").

These cases support Petitioner's application here. Mr. Gerber – a PIMCO US employee – explicitly stated that he "[has] access to a folder that contains various regulatory compliance related files that are located on [PIMCO Europe's] servers that are located in Europe." (Supp. Gerber Decl. ¶ 4) As such, Mr. Gerber has already conceded that there is data sharing between PIMCO US and PIMCO Europe in the ordinary course of business, which is sufficient to establish that control exists because the two "sister corporation[s]" are "wholly owned by the same entity", and there is a "free flow of information" and "a level of cooperation" between the two entities. *Huang*, 2017 WL 706194, at *8–9; *Coventry*, 334 F.R.D. at 71, 73.

Moreover, PIMCO US and PIMCO Europe operate within a unified global platform under PIMCO Prime Real Estate, share overlapping senior management, and participate in a binding intra-group data transfer framework that expressly contemplates cross-border access to information. (ECF No. 5 at 22) These factors additionally support that PIMCO US and PIMCO

---

*See Balintulo v. Ford Motor Co*., 796 F.3d 160, 171 (2d Cir. 2015) ("parent corporations and their subsidiaries [are] legally distinct entities"). Further, it could be said that it is more difficult for a subsidiary to be found to *control* the documents of its parent.

Europe are integrated entities that share documents in the ordinary course of business and that PIMCO US can exert the control necessary for PIMCO Europe to comply with discovery orders from this Court.

## III. <u>This Court Should Grant a Fed. R. Civ. P. 30 (b)(6) Deposition</u>

As discussed, the Supplemental Gerber Declaration contains sufficient evidence – especially in light of the above precedent – of information sharing to allow this Court to grant the Renewed Application. However, to the extent that the Court finds that the Supplemental Gerber Declaration is insufficient to establish that PIMCO US can demand and obtain the documents from PIMCO Europe, Petitioner respectfully requests that this Court grant a short deposition pursuant to Fed. R. Civ. P. 30(b)(6) so that PIMCO US can directly, and with no caveats, answer this Court's question as to whether anyone at PIMCO US can be provided with access or granted access to the documents held by PIMCO Europe. *In re Application of Cbre Global Inv. Nl B.V.*, 2021 U.S. Dist. LEXIS 128412, at *1, 17–18 (S.D.N.Y. July 9, 2021) (granting a 30(b)(6) deposition in connection with a section 1782 application and holding that "CBRE [may] seek[] documents of HBC US's affiliates should the deposition of HBC US's corporate representative reveal additional facts that make clear that HBC US does have possession, custody, or control of such documents. That might occur, for example, if CBRE develops evidence that HBC US and related entities do not adhere to corporate formalities or that there is a free flow of documents among HBC affiliates in the regular course of business.").

## <u>CONCLUSION</u>

For the aforementioned reasons and the reasons set forth in Petitioner's First Application, Petitioner respectfully requests that the Court grant the Renewed Application.

DATED: May 16, 2026

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

Jenny H. Kim
Michael M. Fay
Eric Yang
Virginia Su
55 Hudson Yards
New York, New York 10001
Tel: (212) 446-2300
MFay@bsfllp.com
JKim@bsfllp.com
eyang@bsfllp.com
vsu@bsfllp.com

*Attorneys for Petitioner*