**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re *Ex Parte* Application of<br><br>TOUR DES FINANCES NV GVBF<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 1:26-mc-00213 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF RENEWED APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

**BOIES SCHILLER FLEXNER LLP**

Jenny H. Kim
Michael M. Fay
Eric Yang
Virginia Su
55 Hudson Yards, 20th Floor
New York, NY 10001
Tel.: (212) 446-2300
jkim@bsfllp.com
mfay@bsfllp.com
eyang@bsfllp.com
vsu@bsfllp.com

*Attorneys for Petitioner*

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 3

I. Section 1782's Two-Step Analysis – As Mandated By The Second Circuit – Is Met Here ........ 3

A. Respondent Cannot Show Undue Burden Because Of The Foreign Location Of The Custodians And Documents ........ 4

B. Production By June 20, 2026 Does Not Impose An Undue Burden ........ 7

C. Petitioner's Narrowed Document Requests And Offer To Cover Respondent's Reasonable GDPR Compliance Costs Alleviates Any Undue Burden Concerns ........ 8

II. In The Alternative, This Court Should Grant a Fed. R. Civ. P. 30(b)(6) Deposition ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Cases**

*Brandi-Dohrn v. IKB Deutsche Bank Industriebank AG*,
673 F.3d 76 (2d Cir. 2012) .......... 9

*Coventry Capital US LLC v. EEA Life Settlements, Inc.*,
334 F.R.D. 68 (S.D.N.Y. 2020) .......... 5

*Fitzpatrick v. American Intern. Grp., Inc.*,
2013 WL 9948284 (S.D.N.Y. May 29, 2013) .......... 9

*Gerling Int'l Ins. Co. v. C.I.R.*,
839 F.2d 131 (3d Cir. 1988) .......... 6

*Hunter Douglas, Inc. v. Comfortex Corp.*,
1999 U.S. Dist. LEXIS 101 (S.D.N.Y. Jan. 11, 1999) .......... 5

*In re Boustany*,
2024 U.S. Dist. LEXIS 21617 (S.D.N.Y. Feb. 7, 2024) .......... 5

*In re Ex Parte Application of Porsche Automobil Holding SE*,
2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) .......... 10

*In re in re CRC Liquid Strategies Fund, LP*,
2026 U.S. Dist. LEXIS 1947 (S.D.N.Y. Jan. 6, 2026) .......... 5, 6

*Intel Corp. v. Advanced Micro Devices, Inc.* ("*Intel*"),
542 U.S. 241 (2004) .......... 1

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) .......... 9

*Parfums v. Perfumania, Inc.*,
1998 U.S. Dist. LEXIS 14713 (S.D.N.Y. Sep. 21, 1998) .......... 6

*United States v. King*,
1997 U.S. Dist. LEXIS 14356 (S.D.N.Y. Sep. 18, 1997) .......... 6

No table of authorities entries found.No table of authorities entries found.

**Rules**

Fed. R. Civ. P. 30 .......... 9, 10

Petitioner respectfully submits this reply memorandum in further support of its Renewed Application[1] to this Court for an order pursuant to 28 U.S.C. § 1782 ("Section 1782") granting Petitioner leave to obtain targeted discovery from Respondent PIMCO US for use in the High Court Proceeding brought by Petitioner against CBRE.[2]

## PRELIMINARY STATEMENT

As Judge Cote recognized at the May 12 Hearing, Respondent does not dispute that Petitioner's First Application satisfied the statutory requirements of Section 1782 and three of the four discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.* ("*Intel*"), 542 U.S. 241 (2004). (ECF No. 27-2, "May 12 Tr.," 9:16-11:7) As set forth by Judge Cote, the parties only dispute the fourth *Intel* factor: "undue burden." (*Id.*)

Nonetheless, Respondent argues that the Renewed Application should be rejected for a "separate, dispositive" reason – that Petitioner somehow failed to demonstrate PIMCO US's "control" over the documents sought. Respondent is wrong. First, there is no evidence before the Court that PIMCO US cannot obtain the limited documents Petitioner seeks through the Renewed Application. Second, under binding decisions from the Second Circuit issued in the last year, establishing "possession, custody or control" is not a "separate, dispositive" reason to deny a Section 1782 application. *See SBK Art LLC v. Akin Gump Strauss Hauer & Feld LLP*, 168 F.4th 68, 79, 85 (2d Cir. 2026); *see also Banoka S.à.r.l., ATYS S.A. v. Elliott Mgmt. Corp.*, 148 F.4th 54, 70 (2d Cir. 2025). Rather, the *SBK* and *Banoka* courts both held that a Section 1782 application *must* be considered under a "two-step" analysis. The first step is assessing whether the statutory requirements are met – which here, the parties do not dispute. *SBK,* 168 F.4th at 77-78. And the

---

[1] Capitalized terms not defined herein have the meaning ascribed in Petitioner's Memorandum of Law in Support of the Renewed Application. (ECF No. 24, the "Mem.").

[2] Filed herewith is the Declaration of Jenny H. Kim, dated May 25, 2026 ("Kim Reply Decl.")

second step is assessing whether the four *Intel* factors weigh in favor of granting the Section 1782 application. *Id*. In fact, the Second Circuit cautioned district courts from "impos[ing] strict requirements related to th[e *Intel*] factors that go beyond the limitations found directly within the statute." *Id*. Of course, that is exactly what the Respondent is requesting from the Court in its opposition – to impose a strict requirement of proving "control" when no such limitation is found in Section 1782.

As opposed to treating it as a strict limitation, courts can consider the extraterritorial nature of custodians or the location of documents when assessing whether the discovery requested presents an undue burden on the respondent. However, even when considering "undue burden," the Second Circuit recently instructed that "'[i]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright.'" *Id.* (quoting *Euromepa, S.A. v. R. Esmerian, Inc*., 51 F.3d 1095, 1101 (2d Cir. 1995)). In *SBK*, the Second Circuit affirmed the district court's decision granting Section 1782 discovery from foreign custodians and a separately registered, foreign branch of a law firm.

Here, Petitioner has significantly narrowed its document requests and offered to cover reasonable GDPR compliance costs. Further, Respondent has offered *no* evidence that it cannot obtain the discovery from PIMCO Europe if the Court grants this Renewed 1782 Application and a subpoena is lawfully served. Under these facts, there is no undue burden to Respondent under the fourth *Intel* factor – and certainly, no undue burden that cannot be addressed by a "closely tailored discovery order" from this Court.

## ARGUMENT

### I. Section 1782's Two-Step Analysis – As Mandated By The Second Circuit – Is Met Here

In the past year, the Second Circuit issued two decisions instructing district courts to "analyze[] a § 1782 petition in two steps." *SBK,* 168 F.4th at 77 (citing *Banoka*, 148 F.4th at 64). *Banoka* was issued on July 31, 2025, and *SBK* was issued on February 20, 2026. Under *Banoka* and *SBK*, the first step is ensuring that the three statutory requirements are met. Those are not in dispute on the current application.

The second step is consideration of the four discretionary *Intel* factors laid out by the Supreme Court of the United States. *Id*. The parties previously conceded at the May 12 Hearing that the fourth *Intel* factor – undue burden – is the only factor disputed here. (May 12 Tr. 2:8-20) In *SBK*, the Second Circuit cautioned that "while a district court may freely consider and weigh factors that it finds relevant – even those which do not fall neatly within one of the four *Intel* factors – it abuses its discretion when it imposes strict requirements related to those factors that go beyond the limitations found directly within the statute." *SBK,* 168 F.4th at 78; *see also Banoka,* 148 F.4th at 65 ("district courts are 'not free to read extra-statutory barriers to discovery into [S]ection 1782 under the guise of exercising their discretion.'").

Citing district court decisions that all predate *SBK*, Respondent argues that, on a Section 1782 application, the Petitioner "bears the initial burden of demonstrating that [PIMCO] US has possession, custody, or control over the [] documents that it seeks." (ECF No. 32 "Opp." at 6) However, establishing "possession, custody or control" as a gating mechanism is not one of Section 1782's statutory factors nor is it one of the four *Intel* factors – in fact, such language is found nowhere in the text of Section 1782. As such, under Second Circuit law, "control" cannot be considered as a mandatory, initial burden to be satisfied by the Petitioner.

Rather, as the Second Circuit decided in *SBK* and *Banoka*, the extraterritorial location of custodians and documents may be considered, if at all, under the fourth *Intel* factor, undue burden. *SBK,* 168 F.4th at 85-86; *Banoka*, 148 F.4th at 70. *SBK* is clear, however, that a district court is not "requir[ed]" to consider these extraterritoriality factors. *SBK*, 168 F.4th at 86 However, even if this Court considers the foreign location of the custodians and documents, as detailed below, there is no undue burden to preclude the granting of this application.

**A. Respondent Cannot Show Undue Burden Because Of The Foreign Location Of The Custodians And Documents**

Respondent has submitted three declarations from Mr. Zachary Gerber, a compliance officer at PIMCO US, in opposition to Petitioner's 1782 applications. (*See* ECF Nos. 15, 21, 34) However, Mr. Gerber does not provide a single statement to explain why it would be unduly burdensome for PIMCO US to obtain discovery from PIMCO Europe.

Nowhere in Respondent's three declarations does Mr. Gerber state that PIMCO Europe would refuse to provide PIMCO US the requested discovery in the face of a court-ordered subpoena. Nor do any of the declarations provide any specific details regarding why it would be unduly burdensome for PIMCO Europe to search for and provide the requested discovery to PIMCO US.

Rather, Mr. Gerber states in his most recent declaration that he "contacted [PIMCO Europe's] Data Protection Officer, and asked whether [PIMCO Europe] could or would share records from the EU Server. [He] was informed that [PIMCO Europe] could not do so for several reasons," including, among other things, concerns over GDPR compliance. (ECF No. 34 ¶ 8) Although Mr. Gerber fails to explain whether such requests have been made of PIMCO Europe's Data Protection Officer in the past, that Mr. Gerber knew to contact the officer to make such a

request suggests that Mr. Gerber has previously made these requests for information and that such requests may have been granted.

Mr. Gerber also concedes that he "[has] access to a folder that contains various regulatory compliance related files that are located on [PIMCO Europe's] servers that are located in Europe." (ECF No. 21 ¶ 4) This free flow of information between the two entities in the ordinary course of business demonstrates that there would be no undue burden imposed if PIMCO US was ordered to obtain documents from PIMCO Europe.[3] *See Coventry Capital US LLC v. EEA Life Settlements, Inc.*, 334 F.R.D. 68, 73 (S.D.N.Y. 2020) (affirming granting of motion to compel and finding control where "testimony indicates a flow of information and documents from" a foreign affiliate to a domestic affiliate "in the ordinary course of business"). Respondent's sole response is that Petitioner must show PIMCO US and PIMCO Europe "share[] the type of information requested in the subpoena" to establish control. (Opp. at 7) That is not the law.[4]

---

[3] Respondent's law of the case argument misses the mark as Petitioner *and* Respondent have now submitted additional evidence demonstrating that there would be no undue burden because of the foreign location of the discovery sought. (ECF No. 21; Mem. at 13-14) Because of this "new evidence," the law of the case doctrine is inapplicable. *See Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 662 (2d Cir. 2020).

[4] Respondent's own cited case – *In re Boustany*, 2024 U.S. Dist. LEXIS 21617, at *4 (S.D.N.Y. Feb. 7, 2024) – holds merely that "[w]here documents ordinarily flow freely between two affiliated entities . . . courts will typically find that either entity has access and the practical ability to obtain documents." This holding is traced back to *Hunter Douglas, Inc. v. Comfortex Corp.*, 1999 U.S. Dist. LEXIS 101 (S.D.N.Y. Jan. 11, 1999), which held that control may be found where "documents ordinarily flow freely between" entities – without any analysis of whether the *requested discovery* flowed freely. *Id.* at *9.

Respondent's other cited cases are, as discussed *supra*, outdated because of the Second Circuit's recent decision in *SBK*, and also, inapposite. In *In re CRC Liquid Strategies Fund, LP*, 2026 U.S. Dist. LEXIS 1947 (S.D.N.Y. Jan. 6, 2026), the applicant merely cited to "personal data" such as "demographic data" flowing between entities, which failed to show the "exchange" of substantive business documents. *Id.* at *12-13. Here, by contrast, Petitioner has shown that substantive documents critical to PIMCO's business flow between PIMCO US and PIMCO Europe. Moreover, *CRC* cites to law stating that "access [is] established where evidence 'indicates a flow of information and documents' from subsidiary to parent 'in the ordinary course of business'" –

Mr. Gerber also states that "to the best of my knowledge, no officer or employee of [PIMCO] US has the authority to direct [PIMCO Europe] to share any of its information with [PIMCO] US. Instead, I understand that [PIMCO Europe]'s officers and employees must decide when, and whether, to share [PIMCO Europe]'s documents with any other person or entity, including [PIMCO] US." (ECF No. 34, "Third Gerber Decl." ¶ 9) Of course, Mr. Gerber did not state that he has further discussed with the Data Protection Officer at PIMCO Europe since his first and only conversation on this matter nor does he declare that the officer at PIMCO Europe, to the extent he had authority to do so, would unilaterally refuse to produce documents in response to a court-ordered subpoena. (Third Gerber Decl. ¶ 8) Mr. Gerber's carefully chosen statements, caveated with the words "to the best of my knowledge," do not demonstrate any undue burden to PIMCO US in seeking to obtain these documents from PIMCO Europe.

*SBK* is instructive. Like here, petitioners in *SBK* sought documents from foreign custodians in a foreign office. Respondents in *SBK* argued that the burden caused by the "foreign location of the documents and their custodians" should weigh against granting a Section 1782 application where "the non-U.S. office of a law firm [was] targeted due to its foreign representation of a foreign client concerning a foreign matter[.]" *In Re Application of SBK ART LLC*, No. 25-1563, ECF No. 33.1 at 15, 55 (2d Cir. 2026). However, the Second Circuit held that the district court "acted well within its discretion" in rejecting such burden arguments. *SBK,* 168 F.4th at 86. Here also, given the absence of any evidence from Respondent demonstrating undue burden by the foreign location

---

without any reference to the specific type of documents that must flow. *Id*. at *15. *Parfums v. Perfumania, Inc*., 1998 U.S. Dist. LEXIS 14713, at *7 (S.D.N.Y. Sep. 21, 1998) and *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 141 (3d Cir. 1988) merely cite to out-of-circuit E.D. Wis. and N.D. Ga. cases regarding control. In *United States v. King*, 1997 U.S. Dist. LEXIS 14356 (S.D.N.Y. Sep. 18, 1997), the court found an entity did not have control over a sister corporation's documents because, *inter alia*, the sister corporation – unlike here – would "create a conflict of interest" if it provided the requested discovery.

of the custodians and documents sought, this Court would be acting well within its discretion in granting the Renewed Application.

**B. <u>Production By June 20, 2026 Does Not Impose An Undue Burden</u>**

Respondent then complains that it is unduly burdensome to produce documents responsive to the Subpoena by May 27, 2026. However, Petitioner specifically stated in its Renewed Application that document production by *June 20, 2026* would be sufficient for purposes of the High Court Proceeding. In other words, Respondent has four weeks to produce documents responsive to Petitioner's significantly narrowed document requests.

Respondent markets itself as part of an international group of affiliated entities. PIMCO LLC, Respondent's parent company, boasts 3,220 employees, across 24 offices, and touts itself as a company with broad international reach.[5] Similarly, Respondent's counsel has a "unique global platform and exceptional reach," with "2700 lawyers . . . across 26 offices," and "over US$2 billion in revenue."[6] Respondent's counsel also has offices in Germany, where PIMCO Europe is located.[7] It is simply not credible that Respondent, with the assistance of counsel, could not produce documents responsive to the narrowed discovery requests in the Subpoena in four weeks' time. Notably, in *In re Ex Parte Application of Tour des Finances NV GVBF*, 1:26-cv-05260 (N.D. Ill.), Petitioner made similar discovery requests through a Section 1782 application from a U.S.-entity, Legal & General Investment Management America, Inc. ("LGIM US") to produce

[5] *About Us*, PIMCO (last visited May 24, 2026), https://www.pimco.com/us/en/about-us

[6] *Herbert Smith Freehills and Kramer Levin approve combination to form global legal powerhouse,* Herbert Smith Freehills Kramer (last visited May 22, 2026), https://www.hsfkramer.com/news/2025-04/hsf-and-kramer-levin-approve-combination-to-form-global-legal-powerhouse

[7] *Locations, Meeting Your Global Needs*, Herbert Smith Freehills Kramer (last visited May 23, 2026), https://www.hsfkramer.com/locations?gad_source=1

documents held by its European affiliate Legal & General Investment Management Limited for the same High Court Proceeding. The Northern District of Illinois granted the application, and counsel for LGIM US agreed to produce documents from three foreign custodians. (Kim Reply Decl. ¶¶ 6, 7) This underscores that a European affiliate of a global company with the assistance of a global law firm can produce documents in a compressed time frame if required to do so.

### C. Petitioner's Narrowed Document Requests And Offer To Cover Respondent's Reasonable GDPR Compliance Costs Alleviates Any Undue Burden Concerns

Further, Petitioner significantly narrowed the number of custodians, document requests and the applicable date ranges in the Amended Subpoena. Petitioner also represented that it would be willing to bear Respondent's reasonable costs associated with GDPR compliance and provide reasonable indemnification to Respondent in connection with potential breaches of the GDPR. This resolved any concerns Judge Cote had regarding undue burden.

The narrowed requests identify only three custodians, narrow the applicable date range to approximately two years, and reduce the number of requests from six to just two. (ECF No. 22-1 at 2) The topics are narrowly tailored to the precise issues in the High Court Proceeding, where Petitioner alleges that PIMCO Europe improperly interfered with an appraisal process, leading to adverse consequences under an Amended Facilities Agreement ("AFA"); the requested documents relate to the selection of and communications with the appraisers; PIMCO's participation in the AFA; and any Cash Trap Event or event of default under the AFA. (*Id.*)

Additionally, Petitioner also represented that it would be willing to bear Respondents' reasonable costs associated with GDPR compliance and provide reasonable indemnification to Respondent in connection with potential breaches of the GDPR. (Mem. at 10) Petitioner also provided several more weeks for Respondent to produce the documents – up to at least June 20. (Mem. at 2) The Renewed Application adequately addresses Judge Cote's concerns regarding

burden by narrowing Petitioner's Application to "a request for core documentation," providing "assistance to the respondent," and offering "protection for the respondent in producing these documents." (May 12 Tr. at 16-17)

## II. In The Alternative, This Court Should Grant a Fed. R. Civ. P. 30(b)(6) Deposition

If this Court finds that it needs more information on whether disclosure from a foreign affiliate would constitute an undue burden on Respondent, Petitioner respectfully requests a Rule 30(b)(6) deposition of a representative of PIMCO US to provide testimony regarding PIMCO US's ability to obtain documents from PIMCO Europe that are responsive to the Amended Subpoena.

In opposition, Respondent argues that the requested Rule 30(b)(6) deposition would not be "for use" in a foreign proceeding but this narrow reading of the "for use" requirement is contradicted by binding Second Circuit law. The Second Circuit has repeatedly emphasized that the "for use" factor can be satisfied so long as the information obtained will "serve *some* use in the [foreign] proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (emphasis added); *Brandi-Dohrn v. IKB Deutsche Bank Industriebank AG*, 673 F.3d 76, 83 (2d Cir. 2012) (suggesting that the "for use" requirement is satisfied if "there are circumstances under which" the foreign tribunal "could hear" the evidence – "*regardless of how narrow* those circumstances might be") (emphasis added).

Here, any testimony elicited on a Rule 30(b)(6) deposition will plainly serve "some use" in the foreign proceeding. Petitioner will be able to ascertain the location and identification of responsive documents which pertain directly to the allegations in the High Court Proceeding. *See Fitzpatrick v. American Intern. Grp., Inc.*, 2013 WL 9948284, at *16-17 (S.D.N.Y. May 29, 2013) (authorizing plaintiff to conduct a Rule 30(b)(6) deposition regarding "the completeness of production" and "the practices for recording and maintaining property-level data at the former subsidiaries.") Notably, courts are typically "generous" in granting Rule 30(b)(6) depositions in

Section 1782 applications, even in cases with "tight schedule[s]" and other difficulties. *In re Ex Parte Application of Porsche Automobil Holding SE*, 2016 WL 702327, at *13 (S.D.N.Y. Feb. 18, 2016).

Finally, Respondent makes no showing as to how a Rule 30(b)(6) deposition would be unduly burdensome. Instead, Respondent merely asserts that because it "has already put forth three declarations," a deposition would be unduly burdensome. (Opp. at 15) This is not the law and Respondent cites no law to support its proposition. Further, Mr. Gerber's declarations, which – at best – convey his uncertainty regarding whether PIMCO US can obtain documents from PIMCO Europe if it was ordered by this Court to do so, cannot serve as a substitute to a Rule 30(b)(6) deposition. Petitioner also respectfully requests that this Court grant a Rule 30(b)(6) deposition if Respondent decides to move to quash the Amended Subpoena after it is served.

## CONCLUSION

Petitioner respectfully requests that the Court grant the relief requested in the Renewed Application and/or the Rule 30(b)(6) deposition of Respondent.

DATED: May 25, 2026

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Jenny H. Kim*

Jenny H. Kim
Michael M. Fay
Eric Yang
Virginia Su
55 Hudson Yards
New York, New York 10001
Tel: (212) 446-2300
MFay@bsfllp.com
JKim@bsfllp.com
eyang@bsfllp.com
vsu@bsfllp.com

*Attorneys for Petitioner*

**ATTORNEY CERTIFICATION OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1**

Pursuant to Local Civil Rule 7.1(c), I hereby certify that the preceding Reply Memorandum of Law in Further Support of Renewed Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding, exclusive of the caption, table of contents, table of authorities, signature block and this certificate, contains 3,189 words, and therefore complies with the 3,500 word limitation that is applicable to reply briefs. In determining the memorandum's compliance, I relied on the word count function of the word processing system that was used to prepare this memorandum.

Dated: New York, New York
May 25, 2026

*/s/ Jenny H. Kim*
Jenny H. Kim

*Attorney for Petitioner*